Perry *v.* Lorillard Fire Insurance Co.

---

CHAUNCEY PERRY *v.* THE LORILLARD FIRE INSURANCE Co.

(GENERAL TERM, FOURTH DEPARTMENT, DECEMBER, 1871.)

An assignment in bankruptcy (§ 14) works a change of title to real property, within the condition in an insurance policy that a sale or transfer, or change in title or possession, by legal process, judicial decree, or voluntary transfer or conveyance, shall render the policy void.

Perry *v.* Lorillard Fire Insurance Co.

THIS was a motion by the plaintiff for a new trial upon a case and exceptions, ordered to be heard in the first instance at the General Term.

The facts are stated in the opinion.

*G. F. Danforth,* for the plaintiff, cited 3 Pars. on Con., 472, 480, 488 ; 1 B. & A., 593 ; *Ontario Bank* v. *Mumford* (2 Barb. Ch., 596) ; 4 Nat. Bank Reg., 110 ; 2 Sweeney, 475 10 Law Reg. (N. S.), 333 ; *Copeland* v. *Stevens* (1 B. & A., 592) ; *Hitchcock* v. *N. W. Ins. Co.* (26 N. Y., 68 ; 2 Am. Lead. Cases, 1 ed., 316) ; *Wilson* v. *Hill* (3 Metc., 70) ; *Strong* v. *Manf. Ins. Co.* (10 Pick., 40) ; *Adams* v. *Rockingham Mu. Ins. Co.* (29 Me., 292 ; 6 Cush., 342).

*W. F. Cogswell,* for the defendant, cited *Lappin* v. *The Charter Oak Ins. Co.* (58 Barb., 325 ; 43 N. Y., 389 ) ; *Grosvenor* v. *The Atlantic Fire Ins. Co.* (17 N. Y., 391).

Present—MULLIN, P. J. ; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. This action was brought on a policy of insurance issued by the defendant to one James Cochrane, insuring him against loss by fire upon a brick dwelling-house in the city of Rochester, for one year from the 14th December, 1869. The policy provided that the loss, if any, should be paid to the plaintiff.

The policy contained the condition that if the property " shall be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, then, and in every such case, this policy shall be void."

On the 23d May, 1870, the building insured was damaged by fire to the amount of $2,486.75.

In January, 1870, proceedings in bankruptcy were instituted against Cochrane. On the first of April following, he was decreed a bankrupt, and on the 30th of the same month the register executed the usual assignment in bankruptcy,

Perry *v.* Lorillard Fire Insurance Co.

which was on the same day approved by the district judge, and by it he assigned to the assignee all the estate, real and personal, of the bankrupt, including all the property, of whatever kind, of which he was possessed, or in which he was interested or entitled to have on the 26th January, 1870.

Section 14 of the bankrupt law provides that, upon the execution of the assignment by the judge or register, it shall relate back to the commencement of the proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee.

The same section further provides that all rights in equity, choses in action, patent and patent rights, all debts due the bankrupt, and all liens and securities therefor, and all his rights of action for property or estate, real or personal, and for any cause of action which the bankrupt had against any person arising upon contract or from the unlawful taking or detention, or for injury to his property, and all rights of redeeming such property or estate, with the like right, title, power and authority to sell, manage, dispose of, sue for and recover, or defend the same as the bankrupt might or could have had, if no assignment had been made, shall, in virtue of the adjudication in bankruptcy and the appointment of his assignee, be at once vested in such assignee.

When the proceedings in bankruptcy against Cochrane, to and including the assignment to the assignee, were proved, the defendant's counsel moved for a nonsuit on the ground that by such proceedings and assignment a change had taken place in the title to the property insured, by judicial decree, and that thereupon the policy became and was void, and no action could be maintained thereon.

The court granted the motion and nonsuited the plaintiff.

The plaintiff now moves to set aside the nonsuit and for a new trial.

The question for our consideration then is, has there been, since the issuing of the policy and before the injury of the property insured by fire, a change in the title to that property

by legal process, judicial decree, or voluntary transfer or conveyance?

The proceedings in bankruptcy were not instituted by the insured, but against him by his creditors; the change of title resulting from those proceedings was not voluntary, but compulsory, nor was the change of title effected by legal process.

Jacobs, in his Law Dictionary, says: "*process*" has two significations. First, it is largely taken for all the proceedings in any action or prosecution, real or personal, civil or criminal, from the beginning to the end; secondly, that is termed the process by which a man is called into any temporal court, because it is the beginning or principal part thereof, by which the rest is directed or taken; strictly, it is the proceeding after the original, before judgment.

In the *People* v. *Nevins* (1 Hill, 154, 169), it is said that the word "*process*" usually signifies a writ or warrant, but it has also the meaning given to it by Jacobs.

If it could receive the meaning first given to it by Jacobs, the proceedings in bankruptcy would be legal process, and the change of title might be held to be effected thereby.

But it seems to me that the term legal process, used in the policy, means what is known as a writ, and as attachment or execution on the writs usually employed to effect a change of title to property, they are, or are amongst, the processes contemplated by the policy.

The bankrupt law provides no writ, nor anything in the nature of a writ, by which the title to the bankrupt property can be changed. But if the term, legal process, was to be construed as meaning the whole of a proceeding in a court of law, then the title would be changed by legal process.

But that the words were not intended to be used in the sense of the whole proceeding in an action, is obvious from the use in the policy of the words "judicial decree" that immediately follow.

The words, "legal process," mean all the proceedings in an action or proceeding; they would necessarily embrace the decree which ordinarily includes the proceedings.

By including the word decree in the condition, it is obvious that the framers of it did not understand that it was covered by the word "process."

The inquiry then is reduced to this, was the title changed by a judicial decree?

By the bankrupt law, there can be no appointment of an assignee, nor conveyance to him, until the adjudication that the person proceeded against is a bankrupt; that adjudication must precede any change of title of the bankrupt's property.

Whether the property becomes vested in the assignee by operation of law or by the conveyance to the assignee by the judge or register, one thing is certain, it does not vest until after the conveyance to the assignee is actually made.

All the proceedings in relation to the transfer of the bankrupt's property, result from and carry into effect the decree of bankruptcy, in the same manner that the title to real estate mortgaged is changed by a decree of foreclosure.

The plaintiff's counsel insists that the proceedings in bankruptcy produce no change in the title of the bankrupt to his property. The act declares, in the most clear and unequivocal terms, that the title of the bankrupt to all his estate, real and personal, shall vest in the assignee. No color of title is left in the bankrupt. How then can it be said that the proceedings work no change in the title?

After the conveyance to the assignee, the bankrupt has no title to the property that he could convey to another. He had it before the assignment, and would have had it still, had it not been changed.

It is said in 2 Parsons on Cont., 624, that bankruptcy operates not so minute as a grant or transfer as a sequestration or forfeiture. And it is therefore insisted that there being no grant or transfer the title is not changed.

It matters very little what name is given to the result produced by the adjudication in bankruptcy and assignment to the assignee, whether it has the effect of a grant or is a sequestration; the fact is the title of the bankrupt is divested

and vested in the assignee. If this is not a change of title, it would be difficult to find a name for it.

It is doubtless true that the assignee has an equitable interest in the property, which may be insurable as such, but it would not be insurable under a policy obtained upon a representation that the insured had the title to the property embraced in the policy. Such an interest remaining in a bankrupt cannot prevent the adjudication, and the assignment under it, from producing a change of title.

We cannot disregard the plain provisions of the bankrupt law and follow the decision of a court, however respectable, that virtually overrides the act and nullifies its provisions.

We are constrained to hold that the assignment in bankruptcy changed the title to the property insured, and was for that reason a breach of the condition of the policy, which is therefore void. The motion for a new trial is denied.